ELLA I. POLLOCK, Respondent, *v.* ABRAM D. VAN CAMP, Appellant.

*Evidence — knowledge of the insolvency of a firm — fraudulent sale.*

The evidence which will authorize a referee to hold that a person had knowledge of the insolvency of a firm, and that a certain sale of property to such person tended and operated to hinder and delay creditors, considered and commented upon.

APPEAL by the defendant, Abram D. Van Camp, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Montgomery on the 12th day of August, 1892, upon the report of a referee.

*F. L. Wager* and *Sayles, Searle & Sayles,* for the appellant.

*H. M. Eldredge* and *Westbrook & Borst,* for the respondent.

HERRICK, J. :

This is an appeal from a judgment upon the report of a referee in favor of the plaintiff and against the defendant. The plaintiff is the wife of Irving Pollock, and the mother of Fred L. Pollock, who were carrying on business under the firm name of I. Pollock & Son, at Fort Plain, Montgomery county. The plaintiff, who claims to have loaned I. Pollock & Son money to the amount of nearly $2,000, took from them on the 21st of June, 1890, a bill of sale of all the personal property of said firm, as security, as she claimed, for the amount owing to her, and at the same time she agreed and

assumed to pay some, but not all, of the other debts of said firm of I. Pollock & Son. The firm of A. Ethridge & Co., of Rome, N. Y., dealers in groceries, commenced selling goods to the firm of I. Pollock & Son in April, 1890 ; the last bill of goods sold to them was on June 19, 1890. Pollock & Son never paid Ethridge & Co. for any of the goods purchased of them, and on the 26th of July, 1890, Ethridge & Co. commenced an action in the Supreme Court upon their claim, and procured an attachment to be issued against the property of I. Pollock & Son. The attachment was placed in the hands of the defendant Van Camp, who was a deputy sheriff of Montgomery county, who executed the warrant of attachment, and took into his possession the property, the sale of which gave rise to this action. Pollock & Son made no defense to the action brought against them by Ethridge & Co., and judgment was obtained therein by default, and execution issued thereon, and the property which had been previously attached by the defendant was sold by him as deputy sheriff under said execution.

Thereafter, the plaintiff commenced this action against the defendant, alleging that on July 26, 1890, she was the owner and in possession of the property, and that the defendant wrongfully converted the same ; she claims ownership under the bill of sale before referred to. The defendant, for his defense, asserted that as deputy sheriff he took the property by virtue of the attachment and execution before referred to, and that the said Irving Pollock and Fred L. Pollock, and not the plaintiff, were the owners and in possession of the property taken, and that the title claimed by the plaintiff, and the alleged transfer to her, was a fraud upon the creditors of I. Pollock & Son, and void.

A great deal of evidence was taken upon the trial as to the alleged indebtedness of the firm of I. Pollock & Son to the plaintiff, and as to whether there was in fact any change in the possession of the property, and as to the financial condition of the firm at the time of such transfer.

It will be seen that it is material and important to determine whether the firm of I. Pollock & Son was insolvent at the time of such transfer, and if it was insolvent, whether the plaintiff knew it or had reason to believe it, and whether the transfer was for the purpose of hindering or delaying creditors of the firm.

The referee was requested by the defendant to find " that at the time said alleged sale was made, that said Fred L. Pollock and Irving Pollock were insolvent and unable to pay their debts, and said Ella I. Pollock knew of said insolvency and of the said pecuniary condition of said Fred L. Pollock and Irving Pollock ;" the referee refused so to find, to which refusal the defendant excepted ; this, I think, was error; that they were, in fact, insolvent is not disputed ; it is not a controverted question in the case ; neither is it controverted, so far as the evidence shows, but that both Fred L. Pollock and Irving Pollock knew that they were unable to pay their debts, and the evidence of the plaintiff, I think, conclusively establishes that she also knew of such insolvency.

In her testimony she states that in talking with her husband about securing her for the money that she claims to have advanced, she said at different times that she thought the goods would not secure her.  At the time the bill of sale was handed to her she states : " He handed it to me to secure me ; I knew it would not pay me ; I said the goods in the store would not pay me."

When she went to the store to look over the goods she says she saw there were not goods enough to secure her.  Her son testifies that she asked him if he thought there were goods enough to pay her, and that he told her he thought there were about enough just to pay her claim, if they were sold at regular profit.

In addition to swearing that she did not think there was enough property to secure her, she testifies that she knew that there were other debts ; debts in addition to those she assumed to pay ; in short, her testimony all through shows her belief that the business of the firm was in such a condition that it was necessary that something should be done to secure her, and also her belief that there was not a sufficient amount of property to pay the full amount of her claim. While it may be true that she did not know either the actual amount of their indebtedness nor the actual value of the property that they had, yet she believed that it was inadequate to pay her and to pay the other claims ; and for the purpose of testing the validity of a transfer of property under such circumstances, belief on the part of the person receiving the property, that the grantors have not a sufficient amount to pay their debts, is equivalent to actual knowledge of that fact.   Again, the referee refused to find, at

the defendant's request, " That at the time of said sale this plaintiff knew that said sale and transaction tended and operated to hinder and delay the Ethridges and the creditors of said Fred L. Pollock and Irving Pollock in the collection of their debts;" which refusal to find was excepted to by the defendant. I think this refusal to find was error on the part of the referee; it was a fact that was material and important in the case.

As I have before stated, the plaintiff knew that the firm was indebted to others beside herself; she believed that the property was insufficient to pay her claim; she had been informed by her son, one of the firm, that "There would be about enough to pay just her claim, if they were sold out at regular profit." She testified that she did not know of any property of the firm that she did not take, and she also testifies that she did not know of any way that the creditors were to get their pay. It must be presumed that she was possessed of ordinary intelligence, and knowing that the firm was indebted to various people beside herself, and knowing that she was taking possession of all the firm property, it is difficult to conceive that she did not know that her act in taking such property would hinder and delay the creditors in the collection of their debts; she must be presumed to have known and intended that which would be the natural result of her acts. Upon this question there is no conflict of evidence; the only question is, what conclusion of fact is to be drawn from the plaintiff's own testimony; I can see but one. Without discussing the other questions in the case, I think, for the errors committed by the referee in his refusals to find the requests herein referred to, the same neither in form nor substance having been otherwise found by him, that the judgment should be reversed, the referee discharged and a new trial granted, costs to abide the event.

MAYHAM, P. J., and PUTNAM, J., concurred in the result.

Judgment reversed, referee discharged, new trial granted, costs to abide the event.